**In re TARIFF RESOURCES, INC., Debtor.**

**Bankruptcy No. 86–00410.**

United States Bankruptcy Court, District of Columbia.

Feb. 7, 1988.

## OPINION AND ORDER

GEORGE F. BASON, Jr., Bankruptcy Judge.

Creditor/Landlord New 1211 Connecticut, Inc. ("New 1211") has filed a motion for reconsideration urging the Court to require the Debtor to pay New 1211 $101,-980.66 in administrative rent, rather than the $31,561 allowed by this Court's September 14, 1987 Order partially allowing New 1211's administrative claims. The Court found that there was an oral modification to the lease by which New 1211 agreed (through its rental agent Smithy Braedon) to permit the Debtor to store various items at the subject premises without paying the rent reserved in the leases, provided the Debtor vacated the premises on ten days' notice when requested to do so by New 1211.

New 1211's motion for reconsideration is based on two grounds: (1) the lease expressly prohibits oral modifications, and (2) New 1211's agent did not have actual or apparent authority to make any such modifications. The Debtor argues (1) that the leases can be orally modified, despite the restrictive language, because of the Debtor's detrimental reliance on the lease modification, and (2) New 1211's agent indeed had at least apparent authority to modify the leases orally, thereby giving rise to the mutual assent necessary to overcome the lease prohibition against oral modifications.

The Court will address first the issue of whether Smithy Braedon had either actual or apparent authority to modify the lease orally. A negative answer precludes the Debtor's detrimental-reliance argument because the Debtor could not legitimately detrimentally rely on assertions made by a Smithy Braedon representative who did not have at least apparent authority to bind the creditor to an oral modification of the lease. A positive answer to the agency question, on the other hand, opens the door to a fact-based analysis of the debtor's detrimental-reliance argument.

The agency issue, of course, is also determined by examining the relevant facts. Debtor's President, Douglas C. Tucker, testified that his course of dealings with the landlord's agent (Smithy Braedon) gave rise to his belief that the agent, represented by W. Thomas Locke, Jr., had authority to modify the lease.[1] Significantly, the creditor's sole witness—James G. Hendrickson—was not familiar with the conversations between Locke and Tucker regarding this matter. Therefore, New 1211 failed to present any evidence that Locke

1. *See* Opposition to Motion for Reconsideration at 4.

did not have agency authority,[2] and Mr. Tucker's testimony stands unrebutted.

Nothing in the lease or the management agreement restricts the agent's authority to modify the lease, and the management agreement creates broad authority for the agent.

New 1211's argument that the lease requires any modification to be signed by the party sought to be bound, and the named party to the agreement is New 1211, not Smithy Braedon, ignores the principle that an authorized agent can of course bind a signatory party and the fact that a corporation, such as New 1211, cannot act except through an agent. Again, the fact that the management agreement does not expressly grant authority to Smithy Braedon to sign or modify the lease [3] is not dispositive, since neither does the agreement expressly prohibit Smithy Braedon from signing or modifying the lease. Thus, in the absence of express language, other factors must be considered.[4]

This Court finds and concludes that Smithy Braedon had at least apparent authority to modify the lease because of Mr. Tucker's unrebutted testimony and because New 1211 maintained an office on site but its representative did not participate in any of the pertinent discussions between Mr. Locke and Mr. Tucker. Mr. Hendrickson (New 1211's controller) testified that subsequent to the Chapter 11 petition he showed the Debtor's suite of offices to a prospective new tenant in Mr. Tucker's presence, but that he and Mr. Tucker never discussed payment of rent or the agreement that the Debtor would vacate the premises on ten days' notice.

Since Smithy Braedon had the apparent authority to modify the lease, the next issue is whether the lease could be modified orally. New 1211 argues that it could not be orally modified for two reasons: the lease expressly prohibited oral modifications, and the statute of frauds applied to the lease since it was for more than one year. It is well settled that contracts can be orally modified even in the face of express prohibitions against such modifications unless prohibited by statute.[5] The District of Columbia has no such statute. Furthermore, the District of Columbia has long adhered to the majority rule. *In Nickel v. Scott*, 59 A.2d 206, 207 (Mun.App. D.C.1948), the court stated: "It is well settled that a written contract may be modified, rescinded or discharged by subsequent oral agreement; also that an express stipulation against oral modification is no bar to the parties' right to contract anew on the subject, since such stipulation like any other term of the contract may be rescinded." [Citations omitted]

Of course, the parties to the contract must mutually assent to the oral modification.[6] But once it is concluded that Smithy Braedon had at least apparent authority to modify the lease, the unrebutted testimony of Mr. Tucker clearly establishes that both the Debtor and the Landlord, acting through Smithy Braedon, assented to the oral modification.

■ The Statute of Frauds does not impose an absolute ban on oral modifications. One well-recognized exception to the statute is in the case of detrimental reliance. The District of Columbia follows this rule. Thus, in *Landow v. Georgetown–Inland West Corp.*, 454 A.2d 310, 313 n. 3 (D.C. App.1982), the court noted that "detrimental reliance upon the oral contract by one of the parties may remove the modification from the statute's reach." In this case the Debtor detrimentally relied to the tune of

---

**2.** *Id.* at 1.

**3.** *See* Motion for Reconsideration at 4.

**4.** New 1211 in footnote one of its motion for reconsideration refers to two different sources to support its assertion that an agent is precluded from conveying real property in the District of Columbia. First, it cites *Washington Insurance Agency, Inc. v. Friedlander*, 487 A.2d 599 (D.C.App.1985). This case merely holds that

one tenant-in-common can lease the entire premises and thus bind his co-owners. Second, New 1211 refers to D.C.Code Sec. 45–601 (1981). However, section 45–601 relates to "deeds of conveyance" by "individuals," not by corporations.

**5.** 17 Am.Jur.2d *Contracts* sec. 467 (1964).

**6.** 17 Am.Jur.2d *Contracts* sec. 467 (1964).

over $70,000 by leaving its property on the premises (which actually benefitted New 1211 by making the appearance of the premises more attractive to prospective tenants than if the premises were entirely vacant) rather than removing the property and placing it in storage elsewhere at far less cost than the rent stated in the written lease, as well as by exercising its option to reject the lease pursuant to 11 U.S.C. section 365.

For all the foregoing reasons it is

ORDERED that New 1211's motion for reconsideration is denied.